# ORPHANS' COURT OF BALTIMORE CITY

Filed June 29, 1891.

IN THE MATTER OF THE ESTATE OF REBECCA M. M. POWELL.

*Charles W. Johnson* for caveator.

*Charles J. Bonaparte* for caveatee.

GANS and EDWARDS, JJ.—
LINDSAY, C. J., dissents—

In this case a certain paper writing has been propounded for probate as the will of Rebecca Mary Magdaline Pow-ell. A caveat was filed thereto by Jacob Powell, Sr., alleging mental incapacity, undue influence, and that the paper writing offered was not a will, which was duly answered by Alfred A. Curtis and Christopher C. Schriver, and testimony has been taken upon the issues thus raised. There is no evidence of either mental incapacity or undue influence, and therefore the only question before us is, whether the paper offered is the will of the decedent.

As the paper bears date on February 21, 1878, and purports to dispose only of personal property, the question is to be decided by the principles of law governing wills of personal property prior to the statutory changes in 1884. It is well settled that a will of personal property prior to this time need have no definite form. Any writing which expresses the intention of the decedent as to the disposition of his property after his death will be sufficient. No signature is required, nor is it necessary that there should be any witnesses. Two things are necessary to be found by the court:

First. An intention to dispose of the property after the death of the decedent, and second, that this intention was reduced to writing during the decedent's life. In the present case, we think the evidence clearly shows that the intention of Rebecca M. M. Powell was that the account in the Metropolitan Savings Bank should go to the Rev. Alfred A. Curtis, then of the Cathedral, upon her death, and that this intention is sufficiently expressed by the writing propounded as her will.

The writings offered are a page in what is called the "Signature Book," kept by the bank, and the pass-book, showing the account and its amount.

These not being a will in form, parol evidence is admissible for the purpose of showing the *animus testandi.* In the case of Kelleher vs. Kernan, 60 Md. 440, this doctrine is very clearly laid down. The court says, on page 448: "If the intention is not clearly and satisfactorily expressed, and the paper is not a will in form, but in the form of some other instrument, making disposition of property only after the owner's death, then parol evidence may be resorted to for aid in getting at the intention." Further on it expresses the

extent to which this may be availed of, which we do not think has been transcended in any part of the testimony to which exceptions have been taken.

From the evidence it appears that the said Rebecca M. M. Powell went to the Metropolitan Savings Bank and opened an account on February 21, 1878, and seemed very particular in expressing her desire to have the matter so arranged that the money should go to Bishop Curtis at her death. Upon this part of the case we think there can be no doubt; the only question is was it so fixed at the bank.

A brief statement of facts arising from the testimony as to what the bank actually did in seeking to effectuate the purpose of Mrs. Powell will perhaps be the best answer that can be given to the question.

The pass-book prepared by the bank in which the deposit was entered, Number 3,080, has the head-line partly in print and partly in writing: "Dr. Metropolitan Savings Bank, in account with Rebecca Mary Magdaline Powell, colored, Cr., 114 N. Paca street," and bears date February 21, 1878. The amount of the deposit made at that date was $1,300, which ran up by subsequent deposits to the sum of $1,-961.65. It sets out also the by-laws of the bank, the XIII of which reads as follows: "A book shall be kept at the bank, in which every depositor shall be at liberty to appoint some person or persons to whom, in the event of his or her absence or death, the money shall be paid, unless otherwise disposed of."

Now the page to which we have already referred was taken from what is known as the "signature book," namely, the book pointed out by the above by-law, and contains the following entry: February 21, 1878, Number 3,080, Rebecca Mary Magdaline Powell, colored, 114 Paca street, Maryland," and stencil stamp, printing the words: "Subject to the order of either; the balance at the death of either to belong to the survivor." Immediately underneath this stamp is the word "witness," and after it are the names of Isaac Hartman, then, according to the testimony, the president of the bank, and James I. Ryan, then the teller, who, as the evidence shows, witnessed the transaction in the presence of Mrs. Powell. Then, further on,

in the last column, occurs the name of Rev. Alfred Curtis, followed by the word "Cathedral," written as all the other part of the page, except the names of the witnesses, by C. C. Shriver, then the treasurer of the bank, by the direct instruction of Mrs. Powell. Underneath Bishop Curtis' name is the signature of the depositor in her own handwriting. The heading, in print, directly above both these names is in the following words: "Name of person or persons, to whom, in the event of absence or death, the money shall be paid, unless otherwise disposed of."

Now this, definitely, is what the officers of the bank did in the endeavor to accomplish the express wishes of Rebecca Mary Magdaline Powell.

Clearly, in the opinion of the court, the book called the pass-book, and the page taken from the signature book, naturally belong together, and should not be separated in the probate. United, they would seem to answer every requisite touching the testamentary character of this transaction and liberate the claim to probate from all doubt. Here is the fund to be disposed of, the *animus testandi*, and the party to whom, at her death, it should go.

In arriving at this conclusion we have carefully eliminated the stencil stamp, because, in the opinion of the court, this stamp, although according to the evidence, it might have been, and probably was put there in the course of the general transaction while Mrs. Powell was present in bank, yet it was not there, and could not have been known to Mrs. Powell to have been there at the precise time she signed her name under that of Bishop Curtis.

This, however, does not detract, in any material sense, in our opinion, from the testamentary character of the paper. We have all the attributes of a testamentary paper remaining, necessary under the law governing wills of personal property prior to 1884. The officers of the bank, to make assurance doubly sure in this case, went even beyond what was required of them, and had Mrs. Powell to affix her own signature, costing her great labor, to the paper, and then had this attested by two witnesses. A large number of cases confirmatory of the conclusion at which we have arrived,

might easily be cited from the books, of deed-poll or indenture, and of deed of gift, bond, marriage, settlement, letters, drafts on bankers, assignment of bond, rates, bills or stocks, etc., all of which, under circumstances similar to those connected with the present case, have been decided to be valid and competent wills, both in this State and elsewhere, for the post-mortuary disposition of personal property. This, however, is not necessary.

Our opinion is that this is a good will of its kind and for the end which it proposes to accomplish.

It is therefore ordered and decreed this 29th day of June, 1891, that the petition and caveat be dismissed with costs, and that the paper writing propounded as the last will and testament of Rebecca Mary Magdaline Powell, together with the book of deposit, called the pass-book, be and the same is hereby admitted to probate.